Jerome D. JACKSON, Appellant,

v.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, et al., Appellees.

No. 96–7014.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1996.

Decided Dec. 6, 1996.

---

Allen M. Hutter, Washington, DC, argued the cause for appellant. John P. Racin was on the briefs.

Keith J. Harrison, Washington, DC, argued the cause and filed the brief for appellees.

Before: SENTELLE, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant Jerome D. Jackson appeals from the grant of summary judgment on the ground that the district court abused its discretion in denying his motion for leave to supplement his Rule 108(h) statement of material facts in dispute, and in granting appellee law firm's motion to strike the deficient Rule 108(h) statement, in the absence of a finding of prejudice to the law firm or to the court. He also maintains that the district court erred in granting the law firm's motion for summary judgment before searching the record, independent of the Rule 108(h) statements, to determine whether material issues of disputed fact existed. We find no abuse of discretion by the district court, and because the law firm's statement of material facts not in dispute is supported by the record and the law firm is entitled to judgment as a matter of law, we affirm the district court's grant of summary judgment.

## I.

Jerome D. Jackson was employed for five years as an associate at the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner. On March 21, 1995, he sued the law firm's partners, alleging that his employment had been terminated on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, as amended by Section 101 of the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended; and the District of Columbia Human Rights Act, D.C.Code 1–2501 *et seq.* On June 7, 1995, the district court issued a scheduling order governing all pretrial matters, including strict procedures governing motions for extensions of time. The scheduling order stated, **"Motions for Extensions of Time** are strongly disfavored and parties should not expect extensions to be granted. However, any motion for extension of time shall be filed **at least four days prior** to the date the pleading is due." (emphasis in original) At the end of the scheduling order, the district court emphasized, **"The Above Scheduled Dates Are Firm."** (emphasis in original)

In a joint stipulation filed on August 2, 1995, the parties sought a two-week continuance to file their statements on expert testimony under Federal Rule 26(a)(2)(B). The district court granted the extension but prefaced its order with a warning:

[T]he instant "stipulation" provides the court with no reason for the request and no explanation for why it was not filed at least four days prior to the date the pleading is due, as the court directed in its June 7, 1995 scheduling order. Consequently the court is left with the impression that counsel consider such explanations unnecessary. Such a cavalier attitude towards the rules and the court's directives bodes badly for the upcoming litigation.

Counsel are put on notice that future infringements will prompt a response which may include a denial of the requested relief and the imposition of sanctions as authorized by the Federal Rules and the inherent power of the court.

On August 11, 1995, the parties filed another joint motion for continuance to exchange expert witness statements, and the court granted it without comment.

Two days before the discovery deadline, Jackson filed two motions for continuances in order to respond to interrogatories and document requests and to depose witnesses. Acknowledging the importance of the district court's procedural rules, he explained that the continuance to respond to the discovery requests was necessary because of pressing deadlines in the instant case and other cases. Jackson's motion for additional time to permit depositions of defense experts and organizational witnesses indicated that he did so in part at the request of the law firm. The district court granted both motions but inscribed its orders with handwritten expressions of disapproval. In granting the two-day extension of time to respond to interrogatories and document requests, the court included the notation "Strike # 2." In granting additional time to conduct depositions, the district court added a second "Strike # 2," along with the comment, "I note this is the 2nd admonish[ment] for failing to comply with this court's procedure."

At the conclusion of discovery, on November 6, 1995, the law firm filed a motion for summary judgment. As part of its accompanying memorandum of law, the law firm included a twenty-seven page "Statement of Undisputed Material Facts," as required by Local Rule 108(h). The Rule 108(h) statement set forth the facts supporting its position that the law firm did not terminate Jackson, that Jackson voluntarily left the law firm, and that, in any event, the law firm had adequate reasons to terminate him. Each factual statement included a citation to the record, depositions, or affidavits.

After the court granted a nine-day continuance, Jackson filed an opposition to the motion for summary judgment on December 6, 1994. Attached to his memorandum of law was a Rule 108(h) statement of material facts in dispute, composed of five one-sentence entries.[1] The Rule 108(h) statement was devoid of citations to the record, depositions, or affidavits, and failed both to dispute the law firm's Rule 108(h) statement of undisputed material facts, and to include as a material disputed fact whether the law firm discharged him on the basis of his race. The memorandum of law, however, did include a thirty-one page statement of "relevant facts." Blending factual assertions with argument regarding their legal significance, the "relevant facts" section included numerous assertions that the law firm terminated Jackson through a "counseling out" process. It also described at length the "experience" of other associates at the law firm and the negative treatment of African–American staff.

Jackson filed three motions in December 1995 to correct deficiencies in his opposition to the motion for summary judgment. First, upon realizing that he had failed to attach the exhibits referenced in his memorandum, Jackson sought a one-day continuance in which to file them, apologizing to the district court for failing to comply with its four-day rule. The court granted the continuance, but

---

1. Jackson's Rule 108(h) filing consisted of the following five statements, all relating to whether the firm terminated his employment:

1. Whether defendants (or "the firm") informed plaintiff in May 1994 that the firm had decided to terminate him based on allegedly deficient performance in connection with a "patent clearance project" completed in or about February 1994, and to give him until September 30, 1994 to leave the firm.
2. Whether purported deficiencies in plaintiff's performance in connection with the patent clearance project constituted a legitimate basis for terminating the plaintiff.

3. Whether purported deficiencies with respect to "timeliness" and "efficiency" constituted a legitimate basis to terminate the plaintiff.
4. Whether at the time the termination decision was conveyed to plaintiff in May 1994 he was qualified to perform the work of an associate in the firm.
5. Whether plaintiff's departure from the firm on or about September 30, 1994, was objectively reasonable in the circumstances.

again noted in handwritten form its disapproval of Jackson's additional departure from the rules set forth in its scheduling order: "Counsel continue to follow their own timelines and procedures in lieu of the court's. You put your clients' case at risk." Thereafter, upon recognizing further deficiencies in his Rule 108(h) statement, Jackson filed two additional motions. In his second motion he sought leave to supplement his Rule 108(h) statement with a sixth material disputed issue, namely "[w]hether Jackson's race was a motivating factor in the [law] firm's decision to terminate him." Like the original Rule 108(h) statement, the supplemental statement contained no citations to the record. His third motion, filed on the day his counsel became aware of the departure from the requirements of Local Rule 108(h), sought to amend his Rule 108(h) statement to include citations to the record. Jackson noted that the "relevant facts" portion of his opposition contained record references, and while acknowledging that counsel was "acutely aware" of the court's scheduling requirements, stated that his past violations "ha[d] not been the product of any willful failure to comply with th[e] Court's procedure...." Jackson further maintained that the law firm had suffered no prejudice because his original Rule 108(h) statement set out the relevant material disputed factual issues.

The law firm opposed Jackson's motion to supplement his Rule 108(h) statement on the grounds that it was untimely and would prejudice the law firm, which had already filed its reply to Jackson's opposition to the motion for summary judgment.[2] In addition, the law firm moved to strike Jackson's Rule 108(h) statement and requested that the district court deem as true the facts asserted in its statement of material facts not in dispute, arguing that Jackson's statement failed to comply with Rule 108(h) because it set forth five legal questions for the court to resolve, rather than disputed material facts worthy of resolution at trial. In response, Jackson argued that the law firm's Rule 108(h) statement itself was defective because it was not

limited to a concise statement consisting only of material facts, that the law firm failed to demonstrate prejudice, and that his failure to include record citations in his Rule 108(h) statement did not impede the district court's ability to evaluate the facts and the record.

At a status hearing, during which Jackson attempted to explain why he had failed to comply with the its procedural rules, the district court summarized more than a dozen instances in which the parties sought extensions of time or other relief, observing that "unless a judge exerts control over the calendar, she or he will lose control of the calendar...."[3] The court thereafter denied Jackson's motion for leave to supplement his Rule 108(h) statement, and granted the law firm's motion to strike Jackson's Rule 108(h) statement and motion for summary judgment. In its order, the court noted that as of August 10, 1995, it had placed counsel "on notice that future infringements [of court procedures] will prompt a response which may include a denial of the requested relief...." The court found Jackson's explanation that his failure to include record citations "was just an oversight and was not willful" to be "unsatisfactory especially in light of the court's admonitions that the parties comply with court procedures." In addition, the court concluded that it had accorded Jackson sufficient notice of the need to comply with its own timing rules as well as the requirement of Rule 108(h). Therefore, deeming as uncontroverted the law firm's statement of material facts not in dispute, the court found that the law firm had not terminated Jackson from his employment, an essential element of a *prima facie* discriminatory discharge claim, and concluded that the law firm was entitled to judgment as a matter of law.

## II.

 Jackson makes two principal contentions on appeal. First, he contends that the district court erred in denying his motion

---

2. The law firm also argued that Jackson violated Rule 108(h) by failing both to assert facts in dispute and to supply any citations to the record.

3. The district court referred to at least eleven requests by Jackson and three requests by the law firm for continuances or motions to amend submissions.

to supplement his Rule 108(h) statement and in striking his Rule 108(h) statement in the absence of any findings that the law firm suffered prejudice, that the court's ability to evaluate the evidence bearing on the legal issues had been impaired, or that his statement otherwise undermined the purposes of Rule 108(h). He maintains that the district court sought to punish his counsel without regard to the purposes of Rule 108(h) and this court's decision in *Twist v. Meese*, 854 F.2d 1421 (D.C.Cir.1988), *cert. denied sub nom. Twist v. Thornburgh*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). Second, he contends that, particularly in light of the law firm's allegedly deficient Rule 108(h) statement, the district court erred in granting summary judgment to the law firm without first reviewing the entire record to determine whether a material issue of disputed fact existed. Our review of the district court's denial of Jackson's motion to supplement and grant of the law firm's motion to strike is for abuse of discretion. *Twist*, 854 F.2d at 1423–25; *see Atchinson v. Dist. of Columbia*, 73 F.3d 418, 424 (D.C.Cir.1996). Hence, the question is not whether this court would have proceeded as did the district court, but whether the district court acted within the range of permissible alternatives that were available to it. *See Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1348 (D.C.Cir.1991). By contrast, our review of the grant of summary judgment is *de novo. United States v. Spicer*, 57 F.3d 1152, 1159 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996).

### A.

Under Rule 56 of the Federal Rules of the Civil Procedure, a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Unless the opposing party points to "affirmative evidence" showing disputed material facts, the court shall enter summary judgment, if appropriate, against the adverse party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–67, 106 S.Ct. 2505, 2514–20, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970).

In the United States District Court for the District of Columbia, Rule 56 is supplemented by Local Rule 108(h), which provides, in pertinent part:

Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.... In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

D.D.C. R. 108(h). Rule 108(h) assists the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively. As this court explained in *Gardels v. Central Intelligence Agency*, 637 F.2d 770 (D.C.Cir.1980), with regard to the predecessor local rule identical to Local Rule 108(h):

Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes. The moving party's statement specifies the material facts and directs the district judge and the opponent of summary judgment to the parts of the record

which the movant believes support his statement. The opponent then has the opportunity to respond by filing a counter-statement and affidavits showing genuine factual issues. The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record.

*Id.* at 773. Similarly in *Twist*, the court noted that "a district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." 854 F.2d at 1425. Professors Wright, Miller, and Kane also point out that the purpose of local rules such as Rule 108(h) is "to make certain that the issues on the motion are properly framed." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2719, at 13 (2d ed.1983). Of particular significance, Rule 108(h) places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record. *Twist*, 854 F.2d at 1425; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir.1992).

The importance of filing a proper Rule 108(h) statement is well established. *See Gardels*, 637 F.2d at 773; *Tarpley v. Greene*, 684 F.2d 1, 7 n. 15 (D.C.Cir.1982); *Thompson v. Evening Star Newspaper Co.*, 394 F.2d 774, 776–77 (D.C.Cir.) (interpreting the identical predecessor local rule), *cert. denied*, 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968). As litigants repeatedly have been reminded, failure to file a proper Rule 108(h) statement "may be fatal to the delinquent party's posi-

tion." *Gardels*, 637 F.2d at 773; *Tarpley*, 684 F.2d at 7 n. 15. Indeed, this court in *Twist* warned that "[w]hen counsel fails to discharge th[e] vital function" of filing a proper Rule 108(h) statement, counsel "may not be heard to complain that the district court has abused its discretion by failing to compensate for counsel's inadequate effort." 854 F.2d at 1425. Pointing to this court's decision in *Twist*, the plain language of Rule 108(h), and the prior admonitions of the district court as "provid[ing] [Jackson] with sufficient notice of the possible consequences of failing to comply with Local Rule 108(h)," the district court denied Jackson's motion for leave to supplement his Rule 108(h) statement.[4]

■ In denying Jackson's motion to supplement, the district court exercised its prerogative to manage its docket, and its discretion to determine how best to accomplish this goal. *Cf. Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 567–68 (7th Cir.1992). The Supreme Court has long made clear that a district court need not relinquish control of its docket to a party who repeatedly fails to comply with the court's procedures. *Redfield v. Ystalyfera Iron Co.*, 110 U.S. 174, 176, 3 S.Ct. 570, 571, 28 L.Ed. 109 (1884). As the Court has recently observed, "One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 487, 107 L.Ed.2d 480 (1989); *see also Link v. Wabash R.R.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C.Cir.1990). Congress too has acknowledged the importance of the role of district courts in address-

---

4. Jackson's contention that the district court's four-day rule set forth in its scheduling order was inconsistent with Rules 6 and 83 of the Federal Rules of Civil Procedure, is meritless. Rule 6(b) provides that requests for enlargements of time required under the Federal Rules *"or by order of court"* within a specified time must be made "before the expiration of the period originally prescribed or as extended by a previous order," and the decision whether to grant a motion for continuance is a matter within the district court's discretion. FED.R.CIV.P. 6(b) (em-

phasis added). Here, the four-day rule established by the district court in its scheduling order constituted the "period prescribed by a previous order" and was thus consistent with Rule 6(b). Moreover, in no manner did this four-day rule violate Rule 83 and its requirement that district courts "not circumvent the Federal Rules of Civil Procedure by implementing local rules or 'procedures' which do not afford parties rights that they are afforded under the Federal Rules." *Brown v. Crawford County*, 960 F.2d 1002, 1008 (11th Cir.1992).

ing widespread problems of excessive cost and delay in civil litigation. In the Civil Justice Reform Act of 1990, Pub.L. No. 101–650, § 102(5)(B), 104 Stat. 5089, 5089 (codified as amended at 28 U.S.C. § 471 note), Congress found that "[e]vidence suggests that an effective litigation management and cost and delay reduction program should incorporate ... early involvement of a judicial officer in planning the progress of a case, controlling the discovery process, and scheduling hearings, trials, and other litigation events...."[5] In conformance with the legislative findings, the FINAL REPORT OF THE CIVIL JUSTICE REFORM ACT ADVISORY GROUP OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA (Aug.1993) recommended:

> [T]he parties and their counsel should be bound by the dates specified in any first scheduling or other scheduling order, and that no extensions or continuances should be granted, except on a timely showing of good cause....
>
> Once the schedule is set at the scheduling conference, the presumption should be firmly against the granting of continuances.... [S]tipulations by the parties should not be accepted in the absence of good cause.

*Id.* at 41.

In implementing a scheduling order at the beginning of trial and insisting on its reasonable observance during litigation, the district court acted in a manner consistent with the Supreme Court's and Congress' concern for the fair and efficient administration of justice. The court's denial of the motion to supplement resulted not simply from Jackson's failure to comply with the district court's timing rule, but Jackson's repeated motions to supplement his opposition to the motion for summary judgment. The first was to attach the exhibits referenced in the memorandum that he had inadvertently omitted. The second was to include in his Rule 108(h) statement an entirely new issue of disputed material fact, namely, whether his

race was a motivating factor in the law firm's decision to terminate him. Given the critical nature of this issue to Jackson's lawsuit, his failure from the outset to include it as a disputed material issue constituted egregious error. Even assuming that the district court should consider prejudice to the other party, it was not unreasonable for the court to deny the motion to supplement. At a minimum, the law firm would have needed to file a supplemental reply brief in support of its motion for summary judgment and the resultant delay would have postponed the district court's resolution of the motion for summary judgment.

Jackson's contention that the district court effectively dismissed his lawsuit and thus imposed an impermissibly drastic sanction for his counsel's repeated violations of the court's timing rules is unpersuasive. The cases upon which he relies involve *sua sponte* dismissals or sanctions imposed for attorney misconduct under Rule 37 of the Federal Rules of Civil Procedure. *See, e.g., Bonds v. Dist. of Columbia*, 93 F.3d 801 (D.C.Cir. 1996); *Shepherd v. American Broadcasting Companies, Inc.,* 62 F.3d 1469 (D.C.Cir. 1995); *Ripalda v. American Operations Corp.,* 977 F.2d 1464 (D.C.Cir.1992); *Shea v. Donohoe Const. Co.,* 795 F.2d 1071 (D.C.Cir. 1986); *Jackson v. Washington Monthly Co.,* 569 F.2d 119 (D.C.Cir.1977). Yet nowhere in addressing Jackson's motion to supplement his Rule 108(h) statement did the district court reference Rule 37 and its requirements. Nor did the district court dismiss the case *sua sponte.* Instead, the district court's denial of the motion to supplement resulted from its "desire to manage this [case] as one among many cases on th[e] court's civil calendar." The district court stressed that "[u]nless a judge exerts control over the calendar, she or he will lose control of the calendar, and accommodations to counsel often are the precursor of a trial calendar ... that affords no real firm trial dates, no real firm treatment of issues, no timely resolution

---

**5.** The Report of the Senate Judiciary Committee noted that "delays throughout the course of litigation not only often inure to the benefit of one side over another but also increase court backlog, often inhibit the full and accurate determination of the facts, interfere with the deliberate and prompt disposition and adjudication of cases and thereby contribute to high litigation transaction costs." S.REP. No. 101–416, at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6809.

of motions and things of that sort." While Jackson might prefer that strict enforcement of procedural rules be tempered by consideration of the ultimate consequences on the litigation, the allegation that the district court's denial of the motion to supplement effectively secured the grant of summary judgment to the law firm does not convert action taken to manage the court's docket into sanctions against Jackson.

■ Jackson's contention that the district court should have relied on the "relevant facts" section of his opposition memorandum instead of granting the law firm's motion to strike his Rule 108(h) statement is likewise unpersuasive. While Rule 108(h) does not require litigants to label their Rule 108(h) statements in a particular manner, Jackson's "relevant facts" section fails functionally to comply with the rule's plain terms and purpose. Twenty-nine pages long, the section hardly complies with the rule's requirement that statement of genuine disputed material issues be "concise." Replete with factual allegations not material to Jackson's substantive claims and repeatedly blending factual assertions with legal argument, the "relevant facts" section does not satisfy the purposes of a Rule 108(h) statement. In order to identify material disputed issues that would preclude the entry of summary judgment, the court would have to sift and sort through the record, that is, engage in time-consuming labor that is meant to be avoided through the parties' observance of Rule 108(h). Requiring the court to treat Jackson's "relevant facts" statement as his Rule 108(h) statement would therefore undermine the purposes of the rule by improperly placing the burden on the court, rather than on the opposing party or his counsel, to "winnow the wheat from

the chaff."[6] *Bell, Boyd, & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990).

■ The district court's obligation in examining a Rule 108(h) statement of material facts in dispute, however labeled and wherever it appears in the opposition pleadings, extends therefore only to a determination of whether the party opposing summary judgment has complied with the rule's plain requirements. Contrary to Jackson's contentions, the district court need not consider whether non-compliance with Rule 108(h) was willful, impeded the court's ability to evaluate a motion for summary judgment, or caused prejudice to the moving party. A requirement that the district court do so would subvert the purposes of the rule. As the Third Circuit has stated with respect to a parallel local rule, the rule "does not contemplate that the court will exercise discretion as to whether ... the opposing party's failure to respond was due to excusable neglect or whether the movant will suffer prejudice if the motion is denied. Indeed, the objective of the rule would be defeated if the district court had to stop and investigate such matters before acting." *Anchorage Associates v. Bd. of Tax Review,* 922 F.2d 168, 172 (3d Cir.1990). A district court may take such factors into consideration, but "[w]e leave such decisions wholly to the discretion of the district court where they should properly rest." *Twist,* 854 F.2d at 1425.

■ In plain terms, Rule 108(h) places the burden on the parties to focus the court's attention on the salient factual issues in what otherwise may amount to a mountain of exhibits and other materials. Given Jackson's repeated failures to adhere to the court's scheduling order and his multiple violations of Rule 108(h), and in light of the instructions

**6.** Jackson's assertion that the law firm's Rule 108(h) statement was neither "concise nor a statement of undisputed 'material facts' as contemplated by the rule" fails to observe the language of Rule 108(h). Nothing in Rule 108(h) requires the moving party's statement of undisputed material facts to be concise. Rather, the burden of submitting a "concise statement of genuine issues" falls only on the nonmoving party. The law firm's Rule 108(h) statement comports with the objective of the rule by delineating, in an organized form, the undisputed material facts in the case. Although the law

firm's Rule 108(h) statement is lengthy, it logically and efficiently reviews the relevant background facts of the law firm's operations, the process by which the law firm hired Jackson, the terms of Jackson's employment, the law firm's policies and performance evaluation process, the firm's evaluations of Jackson's work, and Jackson's performance on a specific patent assignment. And unlike Jackson's statement of "relevant facts," the law firm's Rule 108(h) statement does not contain argument. The law firm's statement therefore fully complies with the requirements of the local rule.

from the Supreme Court and Congress that district courts should engage in effective litigation management, we find no abuse of discretion by the district court in denying Jackson's motions to supplement his Rule 108(h) statement. Consequently, under the plain terms of Rule 108(h), the district court could properly grant the law firm's motion to strike his deficient Rule 108(h) statement.

### B.

■ Jackson contends that even after the district court granted the law firm's motion to strike his Rule 108(h) statement, the court could not properly decide summary judgment "without considering the entire record to determine the existence of genuine issues of material fact, including the evidentiary record and argument submitted by [him]." Of course, as the Supreme Court has made clear, this does not accurately describe the district court's obligation in deciding whether to grant summary judgement. "The motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Where a party fails to comply with Rule 56(e) or to file a proper statement of material facts in dispute pursuant to a local rule, the circuits are in agreement that the district court is under no obligation to sift through the record, which often contains voluminous deposition transcripts, interrogatory responses, and document productions, in order to evaluate the merits of that party's case.[7] Instead, pursuant to the remedy afforded by Rule 108(h), the district court is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule 108(h) statement.

Therefore, having struck Jackson's Rule 108(h) statement, the district court properly deemed as admitted the material facts set forth in the law firm's Rule 108(h) statement of material facts not in dispute. It was irrelevant at that point whether the record could have supported a finding of a genuine issue of material fact; the district court's obligation was to determine whether the law firm's statement of undisputed material facts was "adequately supported" by the record. *McKinney v. Dole*, 765 F.2d 1129, 1135 n. 12 (D.C.Cir.1985); *see Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994). Our *de novo* review reveals that each undisputed fact in the law firm's Rule 108(h) statement is accompanied by citations to the record that fully support the assertion, including those relevant to the assertion that Jackson was not terminated. Based on the law firm's factually supported assertion in its Rule 108(h) statement that it had not discharged him, Jackson failed to establish a *prima facie* case of employment discrimination.[8] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1512 (D.C.Cir.1995).

Accordingly, we affirm the grant of summary judgment.

---

7. *See, e.g., Gaspard v. Amerada Hess Corp.*, 13 F.3d 165, 166 n. 1 (5th Cir.1994); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992); *Anchorage Associates v. Bd. of Tax Review*, 922 F.2d 168, 174–76 (3rd Cir.1990); *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1102–1104 (7th Cir.1990); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 19 (1st Cir.1989); *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1035 (D.C.Cir.1988); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.1988); *Dunlap v. Transamerica Occidental Life Ins.* Co., 858 F.2d 629, 631–32 (11th Cir.1988); *Fair v. Fulbright*, 844 F.2d 567, 569 n. 3 (8th Cir.1988); *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984).

8. Even were we to take into consideration Jackson's Rule 108(h) statement, *supra* n. 1, summary judgment still would be proper. Because Jackson's Rule 108(h) statement fails to assert that the law firm terminated his employment on the basis of his race, his assertions in his Rule 108(h) statement that the law firm terminated him are irrelevant since he was an at-will employee of the law firm. *See Rafferty v. NYNEX Corp.*, 60 F.3d 844, 850 (D.C.Cir.1995); *Choate v. TRW, Inc.*, 14 F.3d 74, 76 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994).