# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 21-5193**

**September Term, 2022**
FILED ON: MARCH 23, 2023

ROLANDO R. JIMENEZ,
> APPELLANT

v.

ALEJANDRO N. MAYORKAS,
> APPELLEE

---

Consolidated with 22-5112

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:19-cv-02055)
(No. 1:17-cv-02731)

---

Before: KATSAS and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*

## **J U D G M E N T**

The Court considered this appeal from the United States District Court for the District of Columbia on the record and the briefs. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the orders of the district court, filed on September 24, 2020, September 29, 2020, and March 1, 2022, be affirmed.

Rolando Jimenez is a United States Citizenship and Immigration Services (USCIS) employee who sued the Secretary of Homeland Security, in his official capacity, in 2017 (*Jimenez I*) and 2019 (*Jimenez II*).[1] His lawsuits raised a multitude of employment discrimination and

---

[1] The district court entered orders in *Jimenez I* on September 24, 2020, and March 1, 2022. Though the district court entered orders in *Jimenez I* roughly eighteen months apart, the claims at issue all

retaliation claims. The district court initially dismissed many of the claims for failure to state a claim or failure to exhaust administrative remedies. The district court later granted summary judgment in favor of the Government, including on four claims from *Jimenez I*, and one claim from *Jimenez II*. Importantly, the district court: (1) granted summary judgment prior to discovery on several of the claims; and (2) accepted the Government's statement of undisputed facts as admitted for those claims, because Jimenez's counsel failed to comply with Federal Rule of Civil Procedure 56(d) and Local Rule 7(h)(1).

On appeal, Jimenez challenges the district court's decisions to: (a) grant summary judgment before discovery; (b) grant summary judgment despite alleged evidence of pretext; and (c) deny subsequent motions to alter or amend those judgments. We review—and reject—each of these challenges.

## I.

Federal Rule of Civil Procedure 56(d) governs when a district court may rule on motions for summary judgment prior to discovery, and we review such rulings for an abuse of discretion. *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020); *see also* Fed. R. Civ. P. 56(b), (d).

The district court acted within its discretion when it granted the Government's motions for summary judgment prior to discovery in this case. Rule 56(d) required Jimenez's trial counsel to submit affidavits or declarations explaining why counsel could not present necessary facts to oppose the Government's motions. Fed. R. Civ. P. 56(d). At a status conference, the district court unequivocally instructed trial counsel to file this supporting documentation, and the district court waited almost one year before ruling on the motions. Trial counsel was also alerted about the obligation to file declarations or affidavits via the Government's reply brief in *Jimenez I*, which was filed almost eight months before the district court's rulings in *Jimenez I* and *Jimenez II*.

The excuse that trial counsel misunderstood the obligation did not undermine the district court's authority to consider the Government's undisputed statement of facts as admitted and to rule on the summary judgment motions, as contemplated in federal and local rules of procedure.[2]

---

arose from an action Jimenez filed in 2017. The district court entered its order in *Jimenez II* on September 29, 2020. The *Jimenez II* ruling relates to an action Jimenez filed in 2019.

[2] Rule 56(e) permits district courts to "consider [a] fact undisputed for purposes of the [summary judgment] motion" or "grant summary judgment" when a party fails to support its own assertions with facts or address another party's factual assertions. Fed. R. Civ. P. 56(e)(2), (3); *see also SEC v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000) (explaining that "[i]f the party opposing the motion fails to comply with [Local Rule 7(h)(1)], then 'the district court is under no obligation to sift through the record' and should '[i]nstead . . . deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7(h)(1)] statement'") (third through fifth alterations in original) (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996)).

Accordingly, the district court did not abuse its discretion by granting summary judgment prior to discovery.

## II.

In addition to the procedural issue, Jimenez also contests the district court's determinations on the merits. Specifically, Jimenez raises his non-selection for three permanent positions, a non-appointment to an acting position, and the denial of access to an internal data network. We review *de novo* the grant of summary judgment and conclude that the district court reached the right outcome. *Lin v. District of Columbia*, 47 F.4th 828, 838 (D.C. Cir. 2022).

### A.

The Government concedes that Jimenez established a prima facie case for Equal Employment Opportunity (EEO) discrimination or retaliation regarding the selection of other candidates to fill permanent positions in Frankfurt, Germany; Monterrey, Mexico; and Miami, Florida (United States of America). But to establish pretext for non-selection, the non-selected person must be "substantially more qualified" than the selected applicant. *Calhoun v. Johnson*, 632 F.3d 1259, 1263 (D.C. Cir. 2011) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1092 (D.C. Cir. 2003)). Based on this standard, we agree with the Government that its proffered reasons for selecting other candidates to fill these positions were not pretextual.

#### i.

*Frankfurt, Germany* – Jimenez was not "substantially more qualified" than the selected applicant for the position in Frankfurt, Germany. *Id.* Jimenez received two negative references in relation to the Frankfurt application, whereas the selected applicant had not only an "outstanding interview" but also "received glowing endorsements." J.A. 191. Further, though the selected applicant had not been a fraud detection and national security immigration officer, he had recent experience with adjudications as a "primary national security supervisor," and he held a master's degree and spoke German. J.A. 186–87. By contrast, Jimenez had experience as a fraud detection and national security immigration officer, but lacked recent or relevant adjudications experience, held only an associate's degree, and did not speak German.

Also, without "positive evidence beyond mere [temporal] proximity[,]" one of Jimenez's interviewers becoming aware of Jimenez's EEO complaint does not, alone, establish pretext. *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) (quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007)).

Accordingly, the Government was entitled to summary judgment on this claim.

## ii.

*Monterrey, Mexico* – Jimenez was likewise not substantially more qualified than the selected candidate for the Monterrey, Mexico position. The selecting official was looking for specific field experience. For instance, the selecting official sought to install a person with documentation verification and past supervisory experience; Jimenez did not possess these experiences, but the candidate selected to fill the position did. Further, despite Jimenez appearing on a list of eligible candidates, he was ultimately less qualified than the selected applicant.

Separately, Jimenez also fails to adequately explain how an email from Joanna Ruppel (a supervisor) is relevant to his non-selection for the position. Jimenez originally asserted this argument—that Ruppel's email instructed interviewers not to interview him—in relation to a position in Bangkok, Thailand, not Monterrey, Mexico, and he has not appealed the decision regarding the Bangkok position. All the same, a jury could not infer animus or retaliation from the responses in a different supervisor's affidavit that Jimenez raises in relation to the Monterrey position.[3] So, the Government was entitled to summary judgment on this claim.

## iii.

*Miami, Florida* – For the Miami, Florida position, the vacancies were field positions and called for persons with knowledge of current processes. That being so, it was reasonable for hiring personnel to prioritize recent field experience, which Jimenez lacked. Contrary to Jimenez's assertions, the hiring official's purportedly "strict" reliance on posted hiring criteria was certainly not "unreasonable." *Cf. Jeffries*, 965 F.3d at 858 (explaining, by contrast, that *deviation* from standard procedures "can justify an inference of discriminatory motive") (quoting *Lathram*, 336 F.3d at 1093). Accordingly, the Government was entitled to summary judgment on this claim.

## B.

Jimenez next asserts that USCIS unlawfully denied him access to an internal data network. This claim went through discovery, and we agree with the district court that the Government was entitled to summary judgment.

USCIS had valid reasons to deny Jimenez access to a data network with confidential information. Jimenez was under investigation for violating policies concerning the dissemination of sensitive information while he was on temporary duty at the International Criminal Police Organization (INTERPOL). Jimenez's superiors also believed that he did not need access to the

---

[3] A reasonable jury could not infer animus or retaliation from a statement in a supervisor's affidavit that the supervisor "was required to prepare a response similar to this one" for one of Jimenez's prior EEO complaints. J.A. 644; *see also* Appellant's Br., 42 (quoting J.A. 644). A jury likewise could not infer animus or retaliation from that same supervisor explaining the positive attributes of the selected applicant. J.A. 646–47; *see also* Appellant's Br., 42.

4

network to complete his job duties; thus, he still earned the highest performance rating available during the years he was denied access. Moreover, Jimenez admitted that he stopped requiring access to the system over six years ago.

Accordingly, the Government was entitled to summary judgment on this claim.

## C.

In the last summary judgment claim, Jimenez asserts that he should have been placed in an acting chief position. As with other parts of his brief, Jimenez "fails to develop arguments for his claim[], often choosing instead to simply state facts (inviting the Court, perhaps, to make of them what it will)." *Jefferies*, 965 F.3d at 861. In such cases, we have "decline[d] to take up that task," and our resulting opinions have been produced from "the wheat of arguments made" rather than "the chaff of those potential arguments that might have been constructed from the raw materials [the appellant] includes or alludes to in his briefing." *Id.* This judgment follows suit.

Jimenez alleges that a second-line supervisor was aware of his prior EEO activity, which influenced the decision not to appoint him to the acting chief position. Specifically, Jimenez takes issue with: (1) a needed security clearance, and (2) receiving no response to his written request for an explanation regarding selection for the position. The Government argues that Jimenez lacked the required security clearance and that an adequate reason exists as to why the supervisor did not respond to Jimenez's request for an explanation. We conclude that a reasonable jury could not find the Government's proffered reasons were pretextual.[4]

First, Jimenez's supervisor explained that a "Top Secret/Secure Compartmental Information" clearance was necessary for the acting chief position. J.A. 1054. Jimenez did not have this clearance and, as explained above, was under investigation for violating security policies. Consequently, because Jimenez lacked an adequate security clearance, a reasonable jury could not conclude that this reason for denying him the appointment was pretextual.

Second, the written request Jimenez claimed that his supervisor never responded to was only carbon copied to her; Jimenez, in fact, directed the email to the person selected for the acting chief position. Jimenez provides no additional reason to support his notion that the lack of a response was pretextual other than that "a jury could consider [it]," and that the reasons recounted above could have been raised in response to the email rather than in an affidavit. Appellant's Br., 49–50 (explaining that the reasons offered in the affidavit made a "late appearance" that could "raise[] an inference of pretext"). This type of speculation does not "create a genuine issue of

---

[4] The district court determined that the denial of the acting chief position was not a materially adverse action. "We need not address this issue, however, because, as the government urges, we can affirm on an alternative ground[.]" *Evans v. Sebelius*, 716 F.3d 617, 623 (D.C. Cir. 2013).

fact." *Jeffries*, 965 F.3d at 861 (quoting *Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010). So, we agree that the Government was entitled to summary judgment. [5]

## III.

In the final challenge on appeal, Jimenez argues that the district court should have granted his motions to alter or amend the judgments in favor of the Government. We review the district court's actions for an abuse of discretion and conclude that there was none. *Morrissey v. Mayorkas*, 17 F.4th 1150, 1162 (D.C. Cir. 2021) (citation omitted).

Attorney error for failing to comply with a rule of procedure is generally insufficient to warrant altering or amending a final judgment. *See e.g., Morrissey*, 17 F.4th at 1162–63. Trial counsel was directed to submit affidavits and had almost one year to do so before the district court granted summary judgment. In light of counsel's inaction, the district court's rulings could have been anticipated and did not contravene governing law. *See Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). Therefore, the district court did not abuse its discretion when it denied motions to alter or amend its earlier judgments.

Pursuant to D.C. Circuit Rule 36(d), this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(b).

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

---

[5] Jimenez also takes issue with the same supervisor's statement that Jimenez "consistently and inappropriately tries to disparage [her]," J.A. 1055, and whether a customary thirty-day rotation for the acting chief position existed. Jimenez fails to develop these claims, and, in any regard, they do not undermine the Government's legitimate justification that persons in the acting chief position required a security clearance, which Jimenez did not possess.